**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA RUPCICH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 6615** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **UNITED FOOD AND COMMERCIAL** | ) | |
| **WORKERS INTERNATIONAL UNION** | ) | **Magistrate Judge Gilbert** |
| **LOCAL 881, and JEWEL FOOD** | ) | |
| **STORES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

As grocery store receiving clerk Patricia Rupcich ("Rupcich") was leaving work one day, she walked directly from the back room pushing a grocery cart containing her personal items, a lunch she had previously purchased at the cash register, and a twenty-five-pound bag of birdseed. After she clocked out in the front of the store and headed for the exit, a security guard standing by the front door asked her for a receipt for the items in her cart. Because she did not have a receipt for the birdseed, she was suspended and then terminated. Her Union filed a grievance, but after her employer denied the grievance, the Union chose not to pursue the grievance to arbitration. Rupcich has sued United Food and Commercial Workers International Union, Local 881, ("the Union") for breach of the duty of fair representation pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 and Jewel Food Stores, Inc. ("Jewel") for breach of the collective bargaining agreement in place between the Union and Jewel, as well as defamation. The parties have cross-moved for summary judgment. For the reasons provided herein, the Court grants the Union and Jewel's summary judgment motions and denies Rupcich's cross-motions.

<u>**Local Rule 56.1**</u>

In this district, motions for summary judgment are governed by Local Rule 56.1. "The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'" *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted) (quoting *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 924 (7th Cir. 1994)). The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 537 (7th Cir. 2011) (quotation omitted).

Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). These responses should not contain "irrelevant information, legal arguments, [or] conjecture." *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). Where a litigant fails to comply with such rules, the district court may "choose[] to ignore and not consider the additional facts that a litigant has proposed." *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005).

<u>**Facts**</u>[1]

Rupcich worked at the Jewel grocery store located at 3940 E. 106th Street in Chicago, Illinois, as a receiving clerk. Jewel's LR 56.1(a)(3) Stmt. of Facts ("JSOF") ¶ 25. As part of her employment at Jewel, Rupcich was a member of the Union. Rupcich's LR 56.1(b)(3)(C) Stmt. of Facts ("RSOF") ¶ 8. The employment of the Union members, including Rupcich, at Jewel

---

[1]     The following facts are either undisputed or deemed admitted due to the opposing party's failure to comply with Local Rule 56.1.

were governed by a collective bargaining agreement entitled "Local 881 UCFW Contract 2010-2013 Jewel Food Stores, Inc. Chicagoland," effective January 24, 2010-January 26, 2013 (the "CBA"). *Id.*

On January 19, 2012, at approximately 12:15 p.m., Rupcich was close to finishing her shift at Jewel when she received a telephone call from her husband. RSOF ¶ 10; JSOF ¶ 26. Rupcich's husband, who was babysitting their grandchildren, reported that one of the grandchildren was coughing and her husband needed her assistance. RSOF ¶ 10. One of Rupcich's duties that day had involved restocking large bags of birdseed.[2] *Id.* ¶ 11. When Rupcich headed out of the store, she was pushing a shopping cart containing her personal belongings. *Id.* It is undisputed that her cart also carried a twenty-five pound bag of birdseed that, Rupcich contends, was intended to be restocked. JSOF ¶ 26, Rupcich's Resp. to JSOF ¶ 26. Rupcich had not purchased the birdseed and had no receipt of purchase. JSOF ¶¶ 26, 27.[3]

Rupcich pushed her cart toward the store's exit, past the point of sale. *Id.* ¶ 26. Jewel Loss Prevention Associate Gregory Young ("Young") was standing at the exit to the store before the breezeway. *Id.* ¶ 27. Young asked to see Rupcich's receipt for the birdseed. *Id.* According to Rupcich, at that point, she realized her mistake, apologized, and acknowledged that she was not to leave the store with unpaid store product or to have unpaid store product at the location at which she was stopped. *Id.* ¶ 28. Rupcich returned the cart and birdseed to the wall by the

---

[2]     Defendants dispute whether Rupcich was in fact "working with" birdseed earlier in her shift. Defs.' Combined Resp. to RSOF ¶ 11. But that distinction is not material to this decision.

[3]     Although Rupcich denies that the birdseed had not been purchased, in support, she states in an affidavit that the bag of birdseed was merely "overstock" that she was returning to the front of the store to be restocked and that she "did not intend to purchase" it. Rupcich's Resp. JSOF ¶ 26. But this assertion, even if considered true, fails to contradict Defendants' statement of fact that Rupcich had not, in fact, purchased the birdseed that was in her cart when she was stopped by store security. Indeed, it corroborates it. Moreover, Rupcich's own LR 56.1 statement acknowledges that she had not purchased the birdseed. RSOF ¶¶ 11-13.

service desk and left with her personal belongings. *Id.* ¶ 29. Young reported the incident to Jewel Loss Prevention Manager Marty Oppenhauser ("Oppenhauser"). *Id.* ¶ 30.

On January 23, 2012, Jewel suspended Rupcich pending an investigation. *Id.* ¶ 31. When Rupcich was suspended, she called Marcella Robinson ("Robinson"), her Union Representative, to report the suspension and explain her side of the story. Union's Local Rule 56.1(a)(3) Stmt. of Facts ("USOF") ¶¶ 12, 14. Robinson quickly followed up with a phone call to the Store Manager, Raymond Ulatowski ("Ulatowski"), to request information regarding Rupcich's suspension. *Id.* ¶ 16.

Oppenhauser conducted an investigation on Jewel's behalf. JSOF ¶ 32. As part of the investigation, Rupcich provided a voluntary statement, in which she admits she pushed the shopping cart with the bag of birdseed past the point of sale. *Id.* Rupcich's statement explained that she had forgotten that she had the merchandise in her cart. *Id.* John Novosel ("Novosel"), an associate relations representative for Jewel, reviewed the results of the investigation and made the decision to terminate Rupcich. *Id.* ¶¶ 10, 33.

Jewel states that its decision to terminate Rupcich was based on several factors. *First*, Novosel reviewed the security videotape and still photos, which showed that Rupcich had passed the point of sale and was headed out of the store with the birdseed. *Id.* ¶ 34. *Second*, Novosel took note that the language of Jewel's misappropriation policy did not contain a requirement that intent on the part of any employee be shown in order for an action to constitute misappropriation.[4] *Id.* ¶¶ 17, 35. *Third*, Novosel reviewed Rupcich's voluntary statement and determined that inadvertence was not a mitigating circumstance that would weigh against

---

[4] According to Novosel, "Jewel has made a business determination that a zero tolerance enforcement of its misappropriation policy is necessary to deter employees from misappropriating merchandise and preventing financial loss. Novosel Decl. ¶ 10. By not requiring an inquiry into intent, Jewel believes that the policy promotes a more consistent application of the policy and minimizes the need for fact-intensive investigation. JSOF ¶ 22.

termination.  *Id.* ¶ 35.  After doing so, Novosel made the decision to terminate Rupcich and memorialized his decision in a Corrective Action Review Notice form, which is used by Jewel to inform employees and their union representatives of any disciplinary decisions.  *Id.* ¶ 36.

On January 31, 2012, Store Manager Ulatowski met with Rupcich, accompanied by Union Representative Robinson, to inform Rupcich she was being terminated.  *Id.* ¶¶ 38-39. Ulatowski presented Rupcich with the Corrective Action Report, which indicated that she was being terminated for misappropriation, and asked that she sign the form.  *Id.* ¶ 39.  Robinson advised Rupcich not to sign, and she did not.  USOF ¶ 25.  Mary Anzalone ("Anzalone"), Jewel's personnel coordinator, was then brought into the meeting to act as a neutral witness to attest to the fact that Rupcich declined to sign the corrective action document.  JSOF ¶ 39.  Jewel did not disseminate the Corrective Action Report to any other personnel within the company or outsiders.  *Id.* ¶¶ 46-47.

After Rupcich was terminated, Robinson filed a timely grievance on Rupcich's behalf, which requested that Jewel award Rupcich all of the relief Rupcich sought, including reinstatement and deletion of the disciplinary action from Rupcich's file.  USOF ¶¶ 18, 19.  The Union also asked Jewel to provide the documentation that it relied upon for its disciplinary action (although Rupcich disputes that Jewel provided all of the requested documentation).  *Id.* ¶ 20, Rupcich's Resp. USOF ¶ 20.

On February 4, 2012, Jewel denied Rupcich's grievance.  USOF ¶ 26.  Robinson then held a follow-up meeting with the Union's Grievance Coordinator, Bill O'Keefe ("O'Keefe"), to discuss the denial.  *Id.* ¶ 27.  Robinson and O'Keefe reviewed the relevant information to determine whether to arbitrate the grievance, including Rupcich's awareness of Jewel's misappropriation policy and the fact that she admitted that she had not purchased the bag of

birdseed. *Id.* ¶¶ 10, 29. O'Keefe states that he made the decision not to arbitrate based upon the facts of the investigation and his knowledge that Jewel typically applied its misappropriation policy without an exception for lack of intent.[5] *Id.* ¶ 31. The Union informed Rupcich of its decision and her right to appeal to the Union's Executive Board, which she did. *Id.* ¶¶ 32, 33, 35. Rupcich and her attorney provided the Executive Board with the same facts that O'Keefe had considered, along with a synopsis of the investigation. *Id.* ¶¶ 35, 38. The Executive Board denied her appeal, and this lawsuit ensued. *Id.* ¶ 39.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 772-73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

Here, Rupcich advances what is commonly known as a "hybrid 301" suit against the Union and Jewel pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In

---

[5] Rupcich disputes that Jewel's misappropriation policy was not uniformly neutral as to intent, but does not dispute what O'Keefe "believed" it to be. Rupcich's Resp. USOF ¶ 31.

a "hybrid 301" suit, a plaintiff simultaneously sues her labor union for breach of its duty of fair representation to her, and her employer for breaching the collective bargaining agreement ("CBA") in place between it and the Union. *See Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997). In such cases, "the employee's claim against the union and [her] claim against the employer are interlocked: neither claim is viable if the other fails." *Id.* (citing *White v. Gen'l Motors*, 1 F.3d 593, 595 (7th Cir. 1993)). "When an employer and union are parties to a collective bargaining agreement which contains procedures for resolving employment disputes, however, an employee must establish that the union breached its duty of fair representation to maintain an actionable § 301 claim against the employer." *Filippo v. N. Ind. Pub. Serv. Corp.*, 141 F.3d 744, 748 (7th Cir. 1998)). Thus, Rupcich's claim against Jewel for breach of the CBA rises and falls with her duty of fair representation claim against the Union.

## Analysis

### I.     The Union's Duty of Fair Representation (Count I)

As the Seventh Circuit explained in *Filippo*, "[a] union breaches its duty of fair representation when its actions are arbitrary, discriminatory, or in bad faith." 141 F.3d at 748 (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)); *see also Vaca v. Sipes,* 386 U.S. 171, 190 (1967). "'This is a tripartite standard; a court should look to each element when determining whether a union violated its duty.'" *Id.* at 748-49 (quoting *Griffin v. Air Line Pilots Ass'n, Int'l,* 32 F.3d 1079, 1083 (7th Cir. 1994)). In order "to defeat a motion for summary judgment, plaintiff must proffer evidence supporting at least one of these elements." *Id.* To preserve her claim, Rupcich's cross-motion for summary judgment and her opposition to the Union's motion for summary judgment attempt to present evidence supporting at least two of these elements.

Rupcich faces an uphill battle. The Seventh Circuit characterizes the standard of review of these types of claims as "extremely deferential," and hesitates to "substitute [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 867 (7th Cir. 1997) (quotations omitted). Rupcich, as plaintiff, is tasked with the burden of not simply "establish[ing] that [her] position is as plausible as the union's, but to show that the union's position 'could eventually be deemed not even colorable.'" *Id.* (quoting *Trnka v. Local Union No. 688*, 30 F.3d 60, 61 (7th Cir. 1994)). The Union, by contrast, is accorded the "discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer." *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917 (7th Cir. 2013) (union "enjoys substantial discretion in fulfilling its duty of fair representation.").

Here, Rupcich's duty of fair representation claim arises out of the Union's decision not to pursue her grievance. In conducting grievance investigations, a union is required only to undertake "some minimal investigation of employee grievances." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). Moreover, "the thoroughness of this investigation depends on the particular case, and 'only an egregious disregard for union members' rights constitutes a breach of the union's duty.'" *Id.* (quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985)). The mere fact that a union fails "to make an independent investigation of the charges against the employee does not of itself mandate a finding of unfair representation." *Cote v. Eagle Stores, Inc.*, 688 F.2d 32, 34 (7th Cir. 1982).

In support of its motion, the Union sets forth numerous undisputed facts supporting its contention, as follows. After Rupcich was suspended, she called Robinson to report the

suspension and tell her story.  USOF ¶¶ 12, 14.  Robinson quickly followed up with a phone call to Ulatowski to request further information.  *Id.* ¶ 16.  Robinson filed a timely grievance on Rupcich's behalf, seeking relief including reinstatement and deletion of the disciplinary action from Rupcich's file.  *Id.* ¶¶ 18-19.  The Union also asked Jewel for the documentation that Jewel relied upon for its disciplinary action (although Rupcich disputes that Jewel provided the Union with all of the relevant documents).  *Id.* ¶ 20; Rupcich's Resp. USOF ¶ 20.  Robinson accompanied Rupcich to the termination meeting, and she advised Rupcich not to sign the Corrective Action Report.  USOF ¶ 25.

Moreover, after the grievance was denied, Robinson held a follow-up meeting with O'Keefe to discuss the denial.  USOF ¶ 27.  Robinson and O'Keefe reviewed the relevant information to determine whether to arbitrate the grievance, including Rupcich's awareness of Jewel's misappropriation policy, and her admission that she had not purchased the birdseed.  *Id.* ¶¶ 10, 29.  O'Keefe states that he decided not to arbitrate based upon the facts of the investigation and his knowledge that Jewel applied its misappropriation policy without regard to intent.[6]  *Id.* ¶ 31. The Union informed Rupcich that it decided not to arbitrate, and she exercised her right to appeal to the Union's Executive Board.  *Id.* ¶¶ 32-33, 35.  On appeal, Rupcich and her attorney relied on the same facts that O'Keefe had considered.  *Id.* ¶¶ 35, 38.  The Executive Board denied Rupcich's appeal.  *Id.* ¶ 39.

### A.  Arbitrariness

Arbitrariness requires an "objective inquiry," *Neal*, 349 F.3d at 369, and has been shown where a union fails to timely pursue a grievance, *see Vencl v. Int'l Union of Operating Eng's, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998), or fails to pursue at least a minimal investigation.

---

[6]     Again, although Rupcich disputes that Jewel's misappropriation policy was not always neutral as to intent, she does not dispute what O'Keefe "believed" Jewel's policy to be.  Rupcich's Resp. USOF ¶ 31.

*Neal*, 349 F.3d at 369.  However, the standard of review for arbitrariness is "very deferential . . . because Congress did not intend courts to interfere with the decisions of the employee's chosen bargaining representative."  *Ooley v. Schwitzer Div. Household Mfg., Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992).  Thus, a "union's actions are arbitrary 'only if . . . the union's behavior is so far outside a wide range of reasonableness' as to be irrational."  *Filippo*, 141 F.3d at 749 (quoting *O'Neill*, 499 U.S. at 67).

The Union has presented undisputed evidence that it decided not to pursue Rupcich's grievance only after it promptly investigated the matter in a reasonably thorough fashion.  *See* USOF ¶¶ 10, 12, 14, 16, 18-20, 25, 27, 29; O'Keefe Aff. ¶¶ 6-8.  Rupcich naturally disagrees with that assessment.  But federal courts uniformly hold that mere disagreement on the merits of a case or the strategy employed is insufficient to establish that a union's decision not to pursue a grievance was arbitrary.  *Vaca*, 386 U.S. at 191-92; *see Neal*, 349 F.3d at 369; *Reed v. Int'l Union of United Auto., Aerospace & Agric. Implement Workers of Am.*, 945 F.2d 198, 202-03 (7th Cir. 1991) (citing *Adams v. Budd Co.*, 846 F.2d 428, 434 (7th Cir. 1988)); *Engler v. Roosevelt Univ.*, No. 11 C 7488, 2012 WL 2339312, at *9 (N.D. Ill. Jun. 15, 2012) (no reasonable juror could find decision not to pursue grievance was arbitrary where plaintiff failed to present any evidence to contrary).  Furthermore, the Seventh Circuit has held that a plaintiff seeking to establish arbitrary behavior by the union must demonstrate "that the outcome of the arbitration would probably have been different but for the union's activities."  *Garcia*, 58 F.3d at 1177 (citations omitted).  Here, it is undisputed that on appeal to the Executive Board, Rupcich presented the same evidence, and thus did not provide any additional information that would have changed the outcome.  USOF ¶¶ 35, 38-39.

Rupcich's arguments with regard to arbitrariness simply fail in light of the extremely deferential standard governing these claims. For example, Rupcich argues that the Union should have pursued the grievance to arbitration based upon the outcome of a prior grievance, which involved a former Jewel employee named Belinda Mack. Mack had been terminated when she purchased several flats of flowers, but one either failed to scan when she was checking out, or she intentionally failed to scan it. Mack asserted her mistake was inadvertent, but the arbitrator denied her grievance, concluding that her actions were intentional. But the fact that an arbitrator in a prior case denied a grievance after finding intent does not mean that another arbitrator would have sided with Rupcich on the grounds that she *lacked* intent, particularly given Jewel's misappropriation policy that does not require a finding of intent for termination.

Rupcich also argues that the Union should have known that the phrase in the Corrective Action Report stating that she was "walking out of the store" was false. This, Rupcich asserts, makes it clear that the Union did no investigation of its own and just relied upon Jewel's documents. But again, the law only requires the Union to conduct some minimal investigation, which it did. Moreover, as *Cote* explains, there is no requirement that the investigation be "independent." 688 F.2d at 34. Rupcich therefore fails to establish that the Union's decision not to arbitrate her grievance was arbitrary.

### B. Bad Faith

Rupcich may still prevail if she can establish that the Union denied her the right to arbitrate for a discriminatory reason or in bad faith. The inquiries into whether discrimination or bad faith existed hinge upon "the subjective motivation of the Union officials." *Crider*, 130 F.3d at 1243 (citing *Trnka*, 30 F.3d at 63).[7] To establish bad faith, Rupcich must present some proof

---

[7] In order to establish discrimination, a plaintiff must provide evidence of "invidious" discrimination. *Ooley*, 961 F.2d at 1304. In general, this is shown where a union takes action that is

of improper motive, *see Neal*, 349 F.3d at 369, or "substantial evidence of fraud, deceitful action or dishonest conduct," *see Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 299 (1971) (quotation omitted), that would "support a reasonable inference of bad faith." *Konen v. Int'l Bhd. of Teamsters, Local 200*, 255 F.3d 402, 408 (7th Cir. 2001).

Rupcich is unable to satisfy the onerous burden of establishing that the Union chose not to arbitrate in bad faith.[8] First, Rupcich argues that the Union acted in bad faith by not pursuing her inadvertence defense. The crux of this argument is that the Union failed to view video demonstrating that she had been working restocking birdseed earlier that day. But the mere fact that Rupcich had been restocking birdseed earlier that day does not provide conclusive evidence that she did not intend to steal the product.[9] Nor does it change the fact that Jewel's misappropriation policy does not require that an employee intend to misappropriate merchandise in order to merit disciplinary action. Novosel Decl. ¶ 9 ("Jewel does not consider the employee's intent or state of mind in enforcing its misappropriation policy"). The Union's failure to view the videotape therefore does not rise to the high level of establishing the subjective intent

---

based upon improper distinctions such as race or gender. *See, e.g.*, *Dole v. Commonwealth Edison*, No. 91 C 5913, 1992 WL 332300, at *6 (N.D. Ill. Nov. 6, 1992) (collecting cases). Rupcich does not appear to be advancing a claim on this basis, but on a theory of bad faith.

[8] Curiously, Rupcich also argues that the fact that the Union and Jewel entered into a joint defense agreement in connection with their defense of this lawsuit is evidence of their "bias." But Rupcich cites no case law to support this novel argument, and the Court finds no merit in it.

[9] Rupcich also claims that Jewel did not provide full videotapes of the incident to the Union and that the Union's failure to obtain them is evidence of bad faith. According to Rupcich, the videotape would show that she did not try to conceal the birdseed when she went past the point of sale. In response, Jewel concedes that it did not provide videotapes to the Union, despite the Union's request. Defs.' Resp. RSOF ¶¶ 23-25. But, whether Rupcich had tried to hide the birdseed is immaterial because, as Novosel testified, Jewel's termination of Plaintiff was not premised upon Jewel's belief that Rupcich had tried to conceal the birdseed. Defs. Resp. RSOF ¶ 45. Rather, the basis for the termination was that Rupcich went past the point of sale with the unpaid birdseed, which is what the video shots that were provide to the Union showed. RSOF ¶ 25.

required for bad faith. *Garcia*, 58 F.3d at 1177 (citations omitted) (union's decision not to review a videotape did not support breach because Garcia did not establish that viewing it would have resulted in a different outcome).

Rupcich's reliance upon the case of *Mitchell v. Jewel Food Stores*, 568 N.E.2d 827 (Ill. 1991), also is unavailing. Rupcich claims that the Union acted in bad faith because it was bound by *Mitchell* to pursue her grievance. The Court disagrees. In *Mitchell*, the plaintiff, a security guard at Jewel, was terminated for misconduct for submitting an incorrect time card. Mitchell sued for breach of the employment manual governing his employment, arguing that he had made a mistake and had not intended to be dishonest or commit misconduct, which was required for a "just cause" termination under the employment manual. The Illinois Supreme Court concluded that because the employment manual did not define "misconduct," it was therefore ambiguous, and ruled for the plaintiff. *Id.* at 832. But it is unclear whether the same employment manual in force more than twenty years ago would have governed Rupcich's employment or termination at Jewel, and in any event, the decision interpreted Jewel's policy with respect to misconduct, not misappropriation. The Union's choice not to rely on *Mitchell* is simply another example of a disagreement in strategy that does not rise to the level of bad faith.

Rupcich also argues that the Union improperly bypassed "Step 1" of the grievance procedures of the CBA, which required a conference between the employee, the Union representative, and the Store Director, and that this in and of itself constituted a breach of the duty of fair representation. But on reply, the Union submitted a supplemental affidavit from O'Keefe explaining that the Union and Jewel had a long-standing practice of bypassing Step 1 in termination cases and proceeding directly to Step 2, a meeting between the Union representative and the Jewel associate relations manager, because terminations were handled by Jewel store

management.  O'Keefe Aff. II  ¶ 10.   O'Keefe further avers that "consistent with this practice," Ulatowski told Robinson that the disciplinary action was being handled by Jewel associate relations, rendering Step 1 unnecessary.  *Id.* ¶ 11.  Rupcich's argument is therefore unavailing.

Ultimately, Rupcich's claim is doomed by her failure to cite any cases where a plaintiff survived a union's motion for summary judgment under similar facts.  In the only cases she cites where the plaintiff prevailed, *Bennett v. Local Union No. 66*, 958 F.2d 1429, 1438 (7th Cir. 1992), and *Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 923 (7th Cir. 1989), the plaintiffs did so based on facts that established that the defendant union had engaged in intentional misconduct and deceit (*Bennett*) or may have breached its duty of fair representation due to political bias (*Thomas*).  Rupcich simply has not established that the Union's decision not to arbitrate was "so far outside a wide range of reasonableness' as to be irrational."  *Filippo*, 141 F.3d at 749 (citations omitted). Instead it is clear that the Union simply had a different view of the merits of her grievance.  The Court therefore grants summary judgment to the Union with respect to Count I.

## II.      Breach of Collective Bargaining Agreement Against Jewel (Count II)

As already stated, Rupcich brings a claim against Jewel pursuant to Section 301 of the LMRA, which "permits an employee to file suit in the district court for violation of a collective bargaining agreement between the employee's union and the employer."  *Filippo*, 141 F.3d at 748.  However, "[w]hen an employer and union are parties to a collective bargaining agreement which contains procedures for resolving employment disputes," in order "to maintain an actionable § 301 claim against the employer," an employee plaintiff first "must establish that the union breached its duty of fair representation" to plaintiff.  *Id.*; *see also Thomas*, 890 F.2d at 915; *Grant v. Burlington Indus.*, 832 F.2d 76, 81 (7th Cir. 1987); *Panice v. Exelon Corp.*, No. 06 C

6418, 2008 WL 244217, at *2 (N.D. Ill. Jan. 24, 2008); *Evans v. U.S. Postal Serv.*, 428 F. Supp. 2d 802, 805-06 (N.D. Ill. 2006). Thus, as Rupcich herself acknowledges, her Section 301 claim against Jewel cannot proceed unless she first establishes that the Union failed in its duty of fair representation. Because Rupcich has not satisfied this prerequisite, her Section 301 claim against Jewel necessarily fails, and the Court grants summary judgment as to Count II in Jewel's favor.

### III.   Defamation Claims Against Jewel (Counts III and IV)

Rupcich also asserts two claims for defamation (*per se* and *per quod*) against Jewel, claiming that the following two statements in the corrective action review notice were defamatory: (1) "Patricia walked out of the store with a 25 lb. bag of birdseed alone in a shopping cart without paying for it"; and (2) that she was being terminated for "Misappropriation of Company Property." Dkt. 24, Am. Compl. ¶¶ 46(a)-(b), 50(a)-(b).

Under Illinois law, "[a] defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Solaia Tech., LLC v. Specialty Publ'g Co.,* 852 N.E.2d 825, 839 (Ill. 2006) (internal citations omitted). To state a claim for defamation, a plaintiff must allege facts demonstrating that "the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Id.* Such a statement is "defamatory *per se* if its harm is obvious and apparent on its face." *Id.* There are five types of defamatory *per se* statements recognized under Illinois law; the first being "words that impute a person has committed a crime." *Id.* Even if a statement is not defamatory *per se*, it still may constitute defamation *per*

*quod* if the plaintiff can plead and prove that she sustained special damages. *Bryson v. News Am. Pubs., Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996).

Jewel argues that these defamation claims fail because the allegedly defamatory statements were substantially true, and alternatively, were subject to a qualified privilege that provides an absolute defense to defamation claims. The Court addresses each contention in turn.

### A.      Truth of the Allegedly Defamatory Statements

The "substantial truth" of the allegedly defamatory statements is an absolute defense to a defamation claim under Illinois law. *Wynne v. Loyola Univ. of Chi.*, 741 N.E.2d 669, 675 (Ill. App. Ct. 2000). "While determining 'substantial truth' is normally a question for the jury, the question is one of law where no reasonable jury could find that substantial truth had not been established." *J. Maki Const. Co. v. Chi. Reg'l Council of Carpenters*, 882 N.E.2d 1173, 1186 (Ill. App. Ct. 2008) (quoting *Wynne*, 741 N.E.2d at 675). "Substantial truth refers to the fact that a defendant need prove the truth of only the 'gist' or 'sting' of the statement." *Id.* (quoting *American Int'l Hosp. v. Chi. Tribune Co.*, 483 N.E.2d 965, 968 (Ill. App. Ct. 1985)).

Here, Jewel argues that the statement that Rupcich "walked out of the store" with the birdseed was substantially true because she passed the point of sale without having paid for the product. Rupcich counters that she did not walk out of the store, because she was stopped before reaching the breezeway by the security guard, when she realized her mistake. While the Court recognizes that while technically Rupcich had not "walked out of" Jewel when she was stopped, nevertheless the "gist" of the statement is that she was leaving the store without paying for the birdseed. *See Global Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004) (although a "plaintiff may be able to demonstrate . . . that a statement is technically false in some way . . . . a defendant may then defeat the claim by showing that the statement, although

not technically true in every respect, was substantially true."); *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987) ("in determining the 'gist' or 'sting' . . . [the court must not look] to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement."). No reasonable jury could find in Rupcich's favor based upon the mere technical flaw in Jewel's statement.

Moreover, no reasonable juror could conclude that the statement that Rupcich was being terminated for "Misappropriation of Company Property" also was not substantially true because Jewel had determined that she had violated Jewel's misappropriation policy as interpreted by Jewel. Similarly, it is in and of itself true that misappropriation was Jewel's stated reason for her termination, regardless of whether her termination was justified. *See Seitz-Partridge v. Loyola Univ. of Chi.*, 987 N.E.2d 34, 45 (Ill. App. Ct. 2010) (statement made that doctoral student had submitted an "insufficient" preliminary examination was true and not defamatory). Therefore, no genuine issue of material fact exists to cause the Court to conclude that "substantial truth" would not provide a defense with respect to the second allegedly defamatory statement as well.

### B. Qualified Privilege

Additionally, under Illinois law, a defendant-employer may, on summary judgment, be found to have a qualified privilege that also provides an absolute defense to a defamation claim arising out of the employer-employee relationship. *See Krasinski v. United Parcel Serv.,* 530 N.E.2d 468, 471 (Ill. 1998); *see also Phillips v. Quality Terminal Servs., LLC*, 855 F. Supp. 2d 764, 789 (N.D. Ill. 2012) (citing *Haywood v. Lucent Techs., Inc.,* 169 F. Supp. 2d 890, 916 (N.D. Ill. 2001) (affirmed by 323 F.3d 524 (7th Cir. 2003) ("An otherwise defamatory statement is not actionable if made under a qualified privilege.")). This can include statements made by employees' supervisors in disciplinary notices and at disciplinary meetings. *See*, *e.g.*, *Beauvoir*

*v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 484 N.E.2d 841, 844 (Ill. App. Ct. 1985) (because employer had duty to tell employee reasons for termination, that information subject to qualified privilege).

"The existence of qualified privilege is a question of law." *Haywood*, 169 F. Supp. 2d at 916. The elements of a qualified privilege are: "(1) good faith by the writer; (2) interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to the proper parties only." *Phillips v. Univ. of Chicago Hosps. and Clinics,* 484 N.E.2d 1100, 1104 (Ill. App. Ct. 1985). "A court must 'weigh the value of the type of interest to be protected against the degree of damage to be expected from release of the type of defamatory matter involved.'" *Phillips v. Quality*, 855 F. Supp. 2d at 789-90 (quoting *Haywood,* 169 F. Supp. 2d at 916–17). If a qualified privilege is established, the communication becomes actionable only if the privilege was abused. *Id.* (quoting *Haywood*, 169 F. Supp. 2d at 917). "To satisfy this burden, the plaintiff must present evidence of a 'reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties.'" *Id.* (quoting *Haywood*, 169 F. Supp. 2d at 917).

Here, Jewel has set forth undisputed facts attesting that the allegedly defamatory statements were published as part of the Corrective Action Report during the January 31, 2012 termination meeting. JSOF ¶¶ 38-39. Everyone present at the meeting had a legitimate business reason for attending, including Ulatowski, the acting Store Manager, who informed Rupcich she was being terminated; Robinson, the Union Representative; and Anzalone, the Personnel Coordinator. *Id.* Anzalone in particular was only present for the tail end of the meeting to act as a neutral witness to attest to the fact that Rupcich declined to sign the Corrective Action Report.

*Id.* ¶ 39. Moreover, Jewel did not publish the allegedly defamatory statements to any other personnel within or outside of the company. *Id.* ¶¶ 46-47. These facts support the Court's conclusion that there is no genuine issue of material fact precluding a finding that the allegedly defamatory statements would be subject to a qualified privilege under Illinois law. *See Phillips v. Univ. of Chicago,* 484 N.E.2d at 1104. As a result, the burden then shifts to Rupcich to overcome the privilege by establishing that Jewel acted in reckless disregard of her rights. *See Phillips v. Quality,* 855 F. Supp. 2d at 789-90.

Rupcich argues that Jewel's investigation was deficient, stating that "[t]he falsification of evidence, the failure to investigate the truth, and the failure to send . . . all the investigation documents and video to Local 881 is evidence of Jewel's direct intention to harm Plaintiff, or at the very least a reckless disregard of her rights." Pl.'s Resp. Jewel's Mot. Summ. J. 18. Rupcich contends this evidence gives rise to a factual issue precluding summary judgment, citing the cases of *Naleway v. Agnich*, 897 N.E.2d 902 (Ill. App. Ct. 2008), and *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129 (Ill. 1993). *Naleway*, however, involved the appropriateness of a qualified privilege jury instruction and is unhelpful here. *Kuwik* also is distinguishable because, not only were the parties not in an employer-employee relationship, but the court expressly found that the plaintiff had presented questions of fact regarding the adequacy of defendants' investigation into the truth of the statements at issue. By contrast, here, the evidence presented demonstrates that Jewel conducted an adequate investigation prior to terminating Rupcich, and that its termination decision was consistent with Jewel's personnel policies. *See* JSOF ¶¶ 10, 33-36.

Rupcich's primary argument in support of her claim of reckless disregard is that Oppenhauser "falsely" stated that he saw her place her coat over the bag of birdseed. *See* RSOF

¶ 28. But that statement is unsupported by the evidence. As Jewel points out, Oppenhauser actually testified that he saw video that showed Rupcich placing her coat over the birdseed, and the video shows Rupcich's coat and purse in the child seat of the cart, with the birdseed under the child seat. Defs.' Resp. RSOF ¶ 28. Rupcich thus fails to provide the Court with evidence establishing that Jewel behaved in a reckless manner demonstrating a disregard for Rupcich's rights. *See*, *e.g.*, *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1112-13 (Ill. App. Ct. 1999) (plaintiff failed to overcome privilege where record demonstrated employees followed personnel policies in conducting investigation); *see also Izadifar v. Loyola Univ.*, No. 03 C 2550, 2005 WL 1563170, at *7 (N.D. Ill. Jun. 7, 2005) (summary judgment granted where plaintiff failed to rebut showing that employer had properly conducted investigation); *Wexler v. Morrison Knudsen Corp.*, No. 99 C 6522, 2000 WL 1720344, at **7-8 (N.D. Ill. Nov. 15, 2000) (same).

The Court therefore holds that based upon the summary judgment record, Rupcich fails to create a triable issue of fact as to whether Jewel defamed her, as well as whether the affirmative defense of qualified privilege is applicable. Summary judgment is therefore awarded in Jewel's favor as to Counts III and IV.

## Conclusion

For the reasons set forth above, Defendant United Food and Commercial Workers International Union Local 881's motion for summary judgment [dkt. 73] is granted. Defendant Jewel Food Stores, Inc.'s motion for summary judgment [dkt. 76] is granted. Plaintiff Patricia Rupcich's cross-motions for summary judgment [dkt. 105, 117, 119] are denied. Judgment is entered in favor of Defendants. Civil case terminated.


**SO ORDERED**                    **ENTER:  9/29/14**

                                  **JOHN Z. LEE**
                                  **United States District Judge**